**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

Ricardo Garza,
Petitioner
-vs-
Charles L. Ryan, et al.,
Respondents.

CV-15-1221-PHX-JAT (JFM)

**Report & Recommendation**
**on Petition for Writ of Habeas Corpus**

## I.     MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Red Rock Correctional Center at Eloy, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on June 30, 2015 (Doc. 1).   On September 4, 2015 Respondents filed their Answer (Doc. 11). Petitioner filed a Reply on November 19, 2015 (Doc. 22).   Respondents supplemented the record on February 9, 2016 (Doc. 24).

The Petitioner's Petition is now ripe for consideration.    Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II.     RELEVANT FACTUAL & PROCEDURAL BACKGROUND
### A.     FACTUAL BACKGROUND

In disposing of Petitioner's direct appeal, the Arizona Court of Appeals described the factual background as follows:

> K.P. was walking to his car on May 4, 2007, at approximately 5:00 p.m., when he noticed a Hispanic man and Hispanic woman parked in a black "[m]id-90's" Mercedes outside of the building where he worked. He retrieved his white 2000 Nissan

1

Altima, and as he waited for his co-worker to close and lock the parking area gate, he was approached by the Hispanic man, later identified as Defendant. The man held "a big knife with a long blade that ha[d] jagged edges," and said, "I want your car." K.P. got out of his car, and Defendant got in, backed up to the Mercedes, and yelled at the Hispanic female to "get out" of the Mercedes. Once the female got into the Altima, Defendant drove off. Phoenix Police later searched the Mercedes and found a wallet with check stubs in Defendant's name, a photograph of Defendant, a manila envelope containing several letters addressed to Defendant, broken glass, and blood.

Later that evening, some two and one-half miles from where K.P.'s Altima had been taken, J.S. was in his 2004 Mercedes in a Dairy Queen parking lot. A man, later identified as Defendant, approached J.S. from behind while holding a "[v]ery large" knife, and told him, "Move. Move." J.S. attempted to get his wallet off of the passenger seat, but Defendant pushed his hand off of the wallet and again said, "Move. Move." A witness testified that she saw the incident and noticed a white Nissan Altima about two feet behind the Mercedes. A Hispanic female with blood on her face was in the passenger seat of the Altima. After J.S. got out of his car, Defendant got in and drove off. The female in the Altima moved to the driver's seat and also drove off.

Phoenix Police broadcasted a description of J.S.'s 2004 Mercedes shortly after the incident. At approximately 3:00 a.m. the next morning, an officer on patrol spotted a car fitting the description. After he confirmed that the vehicle had been stolen, the officer requested an air unit and back-up. Defendant led the pursuing officers on a high-speed chase from Phoenix to Casa Grande, but eventually stopped at a gas station and was taken into custody.

Defendant was transported back to Phoenix. After Defendant was released to a police detective, the transporting officer searched the back of the patrol car and found a small bag of what was later identified as 540 milligrams of methamphetamine. During an interrogation, Defendant admitted that he dropped the bag of methamphetamine in the patrol car.

(Exhibit A, Mem. Dec. 1/22/10 at 1-2.)  (Exhibits to the Answer, Doc. 11, are referenced herein as "Exhibit ___."  Exhibits to the Petition, Doc. 1, are referenced herein as "Exhibit P-___." Exhibits to the Supplement, Doc. 24, are referenced herein as "Exhibit R.T. ___.")

## B.   PROCEEDINGS AT TRIAL

Petitioner was charged with two counts of armed robbery, class two dangerous felonies; two counts of theft of means of transportation, class three felonies; and one count of possession or use of dangerous drugs, a class four felony.

On April 25, 2008, Petitioner appeared with counsel for a settlement conference. The court reviewed the allegations, potential sentencing (including prior convictions), and potential additional charges, with the combined potential of 47.75 years in prison. (Exhibit D, R.T. 4/25/08 at 1-8.)  The court also reviewed a plea offer to plead to the two Class 2 felonies (armed robbery) and possession of drugs, with a stipulated minimum sentence of 11 years.  (*Id.* at 8-9.)  The prosecutor advised that though there was no stipulation as to concurrent sentencing, a verbal offer to concurrent sentencing with a stipulated term of 15.75 years had been made.  (*Id.* at 9.)  The prosecution also noted that it was agreeing to not pursue charges of felony flight and witness tampering.  (*Id.* at 10.)

Petitioner did not proceed with the plea agreement, and eventually proceeded to trial, where he testified in his own defense, asserting that he was asked by a mutual friend to "switch cars" with K.P..  The prosecution sought to impeach Petitioner based on the failure to reveal these facts to police, and questioned Petitioner whether anyone had reviewed the police report with him.  Counsel requested a sidebar and complained that the questioning was improper comment on communication with counsel, and moved for a mistrial.  The court limited the questioning but denied the motion for mistrial. (Exhibit A, Mem. Dec. at 2-3.)  (*See also* Exhibit E, R.T. 11/24/08 at 84-87; 105-111.)

Petitioner was convicted as charged, and was sentenced to consecutive twenty-year prison terms for the two counts of armed robbery, fifteen-year terms for each count of theft of means, and a ten-year term for possession or use of dangerous drugs, each to run concurrently with the armed-robbery terms, an effective sentence of 40 years in prison.  (Exhibit A, Mem. Dec. 1/22/10 at 3.)

**C.**     **PROCEEDINGS ON DIRECT APPEAL**

Petitioner filed a direct appeal, raising a single issue:

> Did the trial court abuse its discretion and violate Defendant's Sixth Amendment Right to counsel by refusing to grant Defendant's mistrial motion when the prosecutor cross-examined Defendant about attorney client communications, and by refusing to instruct the jury to disregard the improper question, especially when

credibility was crucial to the State's case and the State referred to the improper statement in closing argument?

(Exhibit P-A, Opening Brief at 31.)

Petitioner attempted to file a *Pro Se* Supplemental Opening Brief (Exhibit P-C), arguing: (1) prosecutorial misconduct; (2) tainted photo lineup; (3) *Miranda* rights violation; (4) erroneous denial of motion for directed verdict; (5) consecutive sentences were not appropriate because of the limited time between the offenses; (6) his sentences were disproportionate.  The supplemental brief was stricken as an unauthorized *pro se* filing by a represented party.  (Exhibit P-D, Order 2/23/10.)

In a Memorandum Decision issued July 22, 2010, the Arizona Court of Appeals affirmed Petitioner's convictions, concluding that the trial court had properly weighed the effect of the prosecutor's questions and found that no mistrial was necessary. (Exhibit A at 5.)

Petitioner filed a Petition for Review (Exhibit P-D, Doc. 1-2 at 26) by the Arizona Supreme Court, which summarily denied review on January 18, 2011 (Exhibit P-D, Order, Doc. 1-2 at 35).

**D.     PROCEEDINGS ON POST-CONVICTION RELIEF**

On March 11, 2011, Petitioner filed a Notice of Post-Conviction Relief (Exhibit F).  Counsel was appointed, who eventually filed a Notice of Completion (Exhibit G), evidencing an inability to find an issue for review.  Petitioner was granted leave to file a *pro per* petition.  (Exhibit H, M.E. 8/10/11.)

Petition filed his *pro per* Petition for Post-Conviction Relief (Exhibit J, Appendix (Doc. 11-1 at 154, *et seq.*)), raising claims of ineffective assistance of counsel based on (1) trial counsel's deficient impeachment of K.P.; (2) trial counsel' deficient impeachment of victims J.S. and M.W.; (3) appellate counsel's failure to raise claims of ineffective assistance, due process violations, and *Miranda* violations.  He subsequently filed an Amended Petition (Exhibit J, Appendix (Doc. 11-1 at 174, *et seq.*)), arguing: (1) ineffective assistance of trial counsel by failure to conduct pretrial investigations and to

4

interview witnesses; (2) ineffective assistance regarding failure to pursue a hearing challenging the identifications; (3) ineffective assistance regarding failure to pursue J.S.'s presence in the courtroom; (4) ineffective assistance regarding plea agreement; (5) ineffective assistance for failing to read the police reports and pretrial documents to Petitioner; (6) ineffective assistance for representing that Petitioner would receive a sentence of probation to 3 years; (7) ineffective assistance for failing to seek a mistrial based on communications between the prosecutor and an identifying witness when Petitioner was introduced at trial; (8) ineffective assistance for failing to seek a mistrial based on the prosecutor obtaining information on the defense's trial strategy; (9) ineffective assistance of trial counsel for failing to object to the prosecution's misrepresentation of the law; (10) ineffective assistance of trial counsel for instructing Petitioner to deny being on drugs or medications, when he was known to be on court ordered psychotropic drugs; and (11) prosecutorial misconduct regarding claims 7 through 10).

The PCR court summarily dismissed the petition, finding that Petitioner had failed to show deficient performance and prejudice.  (Exhibit P-E, Order 9/6/12 (Doc. 1-4 at 43, *et seq.*).)

Petitioner sought review by the Arizona Court of Appeals, arguing claims of ineffective assistance of counsel at trial, on appeal, and in his PCR proceeding.  (Exhibit P-E, Pet. Rev. (Doc. 1-2 at 38, *et seq.*).)

On February 10, 2014, the Arizona Court of Appeals denied review, concluding:

> On review, Garza summarizes his claims and the trial court's ruling but he does not identify facts material to the consideration of the issues he raises or develop any argument in support of them. Instead, he attempts to incorporate by reference the argument made in his filings below; that procedure, however, is not permitted. Ariz. R.Crim. P. 32.9(c)(l) (iv). Garza's failure to comply with Rule 32.9 and his failure to develop any meaningful argument in support of his claims compels our summary refusal to grant review. See Ariz. R.Crim. P. 32.9(c)(l) (petition for review must contain "reasons why the petition should be granted" and either appendix or "specific references to the record"), 32.9(f) (appellate review under Rule 32.9 discretionary); State v. Bolton, 182 Ariz. 290, 298, 896 P.2d 830, 838 ( 1995) (insufficient argument waives claim on review); State v.

> French, 198 Ariz. 119, ~ 9, 7 P.3d 128, 131 (App.2000) (summarily rejecting claims not complying with rules governing form and content of petitions for review), disapproved on other grounds by Stewart v. Smith, 202 Ariz. 446, ii 10, 46 P.3d 1067, 1071 (2002).

(Exhibit I, Mem. Dec. 2/10/14 at 1-2.)

Petitioner then filed a Motion to Extend Time to Petition for Review and Motion for Reconsideration (Exhibit P-E, Motion (Doc. 1-2 at 45 *et seq.*)).  The Arizona Court of Appeals summarily denied reconsideration.  (Exhibit P-E, Order 3/11/14 (Doc. 1-3 at 1).)

Petitioner then filed a Petition for Review and Motion for Reconsideration with the Arizona Supreme Court (Exhibit P-E (Doc. 1-3 at 8, *et seq.*)).  The Arizona Supreme Court summarily denied both on August 28, 2014.  (Exhibit P-E, Order 8/28/14 (Doc. 1-2 at 37, *et seq.*).)

## E.    **PRESENT FEDERAL HABEAS PROCEEDINGS**

**Petition** - Petitioner commenced the current case by filing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on June 30, 2015 (Doc. 1).  Petitioner's Petition asserts the following six grounds for relief:

> In **Ground One**, Petitioner alleges that the trial court violated his Sixth Amendment right to counsel by denying Petitioner's motion for a mistrial and by failing to instruct the jury to disregard improper questioning. In **Ground Two**, Petitioner alleges a violation of his Miranda rights in violation of the Fifth, Sixth, and Fourteenth Amendments. In **Ground Three**, he alleges that his Fifth Amendment due process rights were violated by an improper line-up and admission of identification testimony. In **Ground Four**, he alleges that he received the ineffective assistance of trial counsel in violation of his Sixth Amendment rights. In **Ground Five**, he alleges that he received the ineffective assistance of appellate counsel in violation of his Sixth Amendment rights. In **Ground Six**, Petitioner alleges that his sentence violated his Fifth and Fourteenth Amendment due process rights and his Sixth Amendment right to a jury trial.

(Order 7/23/15, Doc. 7 at 2 (emphasis added).)

**Response** - On September 4, 2015, Respondents filed their Response ("Answer") (Doc. 11).  Respondents argue that the Petition is timely, Grounds 2, 3, and 6 are procedurally defaulted, and Grounds 1, 4 and 5 are without merit.

Respondents provide only limited exhibits with their Answer, leaving the Court to wade through Petitioner's largely unlabeled exhibits for much of the record.  (*See* Answer, Doc. 11 at 2, n. 1 (referencing proffer of unsubmitted transcripts, and referring the Court to Petitioner's exhibits).)  While Rule 5, Rules Governing Section 2254 Cases, does not mandate that Respondents reproduce anything beyond appellate briefs and rulings, the undersigned finds that reliance upon a *pro se* petitioner's unlabeled exhibits frustrates the review and citation of the record.  The practice is discouraged.

**Reply** - On November 19, 2015 Petitioner filed a Reply (Doc. 22).  Petitioner argues no specific claims in his Reply, but does provide expansive recitations of law which are related to his claims.

**Supplement to Record** – On February 8, 2016, the Court observed that Respondents have responded on the merits to Grounds One, Four and Five, but had not provided the trial transcript to permit evaluation of the merits.   Accordingly, Respondents were directed to provide transcripts form opening statements through closing arguments.

On February 9, 2016, Respondents complied (Doc. 24), supplementing the record. Respondents have provided a series of unlabeled transcripts.  The undersigned references those transcripts herein as "Exhibit R.T. _____."

Although Petitioner filed an objection (Doc. 25) asserting he had not received one of the filed transcripts, copies were subsequently served on Petitioner, and he has not asserted any further objections to the supplemented record.  (Order 3/1/16, Doc. 26; Notice of Service 3/1/16, Doc. 27.)

### III.    APPLICATION OF LAW TO FACTS

**A.    EXHAUSTION, PROCEDURAL DEFAULT AND PROCEDURAL BAR**

Respondents argue that Grounds 2, 3, and 6 are either procedurally defaulted or were procedurally barred on an independent and adequate state ground, and thus are barred from federal habeas review.

1.    **Exhaustion Requirement**

Generally, a federal court has authority to review a state prisoner's claims only if available state remedies have been exhausted.  *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*). The exhaustion doctrine, first developed in case law, has been codified at 28 U.S.C. § 2254(b) and (c).  When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim.  *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied*, 455 U.S. 1023 (1982).

Ordinarily, to exhaust his state remedies, the petitioner must have fairly presented his federal claims to the state courts.  "A petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim."  *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005).

**Proper Forum** - "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

**Proper Vehicle** -  Ordinarily, "to exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32." *Roettgen v. Copeland*,  33 F.3d 36, 38 (9th Cir. 1994).   Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court.  This is true even where alternative avenues of reviewing constitutional issues are still available in state court.  *Brown v. Easter*, 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989).

**Factual Basis** – A petitioner must have fairly presented the operative facts of his federal claim to the state courts as part of the same claim.  A petitioner may not broaden the scope of a constitutional claim in the federal courts by asserting additional operative

facts that have not yet been fairly presented to the state courts.  Expanded claims not presented in the highest state court are not considered in a federal habeas petition. *Brown v. Easter*, 68 F.3d 1209 (9th Cir. 1995); *see also, Pappageorge v. Sumner*, 688 F.2d 1294 (9th Cir. 1982), *cert. denied*, 459 U.S. 1219 (1983).  And, while new factual allegations do not ordinarily render a claim unexhausted, a petitioner may not "fundamentally alter the legal claim already considered by the state courts." *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986). *See also Chacon v. Wood*, 36 F.3d 1459, 1468 (9th Cir.1994).

**Legal Basis** - Failure to alert the state court to the constitutional nature of the claim will amount to failure to exhaust state remedies.  *Duncan v. Henry*, 513 U.S. 364, 366 (1995).   While the petitioner need not recite "book and verse on the federal constitution," *Picard v. Connor,* 404 U.S. 270, 277-78 (1971) (quoting *Daugherty v. Gladden*, 257 F.2d 750, 758 (9th Cir. 1958)), it is not enough that all the facts necessary to support the federal claim were before the state courts or that a "somewhat similar state law claim was made."  *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(*per curiam*).  "[T]he petitioner must make the federal basis of the claim explicit either by specifying particular provisions of the federal Constitution or statutes, or by citing to federal case law," *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005), or by "a citation to a state case analyzing [the] federal constitutional issue." *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003).  But a drive-by-citation of a state case applying federal and state law is not sufficient.

> For a federal issue to be presented by the citation of a state decision dealing with both state and federal issues relevant to the claim, the citation must be accompanied by some clear indication that the case involves federal issues. Where, as here, the citation to the state case has no signal in the text of the brief that the petitioner raises federal claims or relies on state law cases that resolve federal issues, the federal claim is not fairly presented.

*Casey v. Moore*, 386 F.3d 896, 912 n. 13 (9th Cir. 2004).

**Fair Presentation** - "[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document)

that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). The Arizona habeas petitioner "must have presented his federal, constitutional issue before the Arizona Court of Appeals within the four corners of his appellate briefing." *Castillo v. McFadden*, 399 F.3d 993, 1000 (9th Cir. 2005). *But see Insyxiengmay v. Morgan*, 403 F.3d 657, 668-669 (9th Cir. 2005) (arguments set out in appendix attached to petition and incorporated by reference were fairly presented).

## 2.   **Procedural Default**

Ordinarily, unexhausted claims are dismissed without prejudice. *Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991). However, where a petitioner has failed to properly exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief. Dismissal with prejudice of a procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would excuse the default. *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Respondents argue that Petitioner may no longer present his unexhausted claims to the state courts. Respondents rely upon Arizona's preclusion bar, set out in Ariz. R. Crim. Proc. 32.2(a). (Answer, Doc. 11 at 15.)

**Remedies by Direct Appeal** - Under Ariz.R.Crim.P. 31.3, the time for filing a direct appeal expires twenty days after entry of the judgment and sentence. Moreover, no provision is made for a successive direct appeal. Accordingly, direct appeal is no longer available for review of Petitioner's unexhausted claims.

**Remedies by Post-Conviction Relief** – Under Arizona's waiver bar, Petitioner can no longer seek review by a subsequent PCR Petition.

Waiver Bar - Under the rules applicable to Arizona's post-conviction process, a claim may not ordinarily be brought in a petition for post-conviction relief that "has been waived at trial, on appeal, or in any previous collateral proceeding."   Ariz.R.Crim.P.

32.2(a)(3).    Under this rule, some claims may be deemed waived if the State simply shows "that the defendant did not raise the error at trial, on appeal, or in a previous collateral proceeding." *Stewart v. Smith*, 202 Ariz. 446, 449, 46 P.3d 1067, 1070 (2002) (quoting Ariz.R.Crim.P. 32.2, Comments). *But see State v. Diaz*, 236 Ariz. 361, 340 P.3d 1069 (2014) (failure of PCR counsel, without fault by petitioner, to file timely petition in prior PCR proceedings did not amount to waiver of claims of ineffective assistance of trial counsel).

For others of "sufficient constitutional magnitude," the State "must show that the defendant personally, "knowingly, voluntarily and intelligently' [did] not raise' the ground or denial of a right." Id.  That requirement is limited to those constitutional rights "that can only be waived by a defendant personally." *State v. Swoopes*, 216 Ariz. 390, 399, 166 P.3d 945, 954 (App.Div. 2, 2007).  Indeed, in coming to its prescription in *Stewart v. Smith*, the Arizona Supreme Court identified: (1) waiver of the right to counsel, (2) waiver of the right to a jury trial, and (3) waiver of the right to a twelve-person jury under the Arizona Constitution, as among those rights which require a personal waiver.  202 Ariz. at 450, 46 P.3d at 1071.   Claims based upon ineffective assistance of counsel are determined by looking at "the nature of the right allegedly affected by counsel's ineffective performance. *Id.*

Here, none of Petitioner's claims are of the sort requiring a personal waiver, and Petitioner's claims of ineffective assistance similarly have at their core the kinds of claims not within the types identified as requiring a personal waiver.

Exceptions - Rule 32.2 does not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h).  See Ariz. R. Crim. P.  32.2(b) (exceptions to preclusion bar); Ariz. R. Crim. P.  32.4(a) (exceptions to timeliness bar).  Petitioner has not asserted that any of these exceptions are applicable to his claims.   Nor does it appears that such exceptions would apply.  The rule defines the excepted claims as follows:

d. The person is being held in custody after the sentence

imposed has expired;

       e. Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence. Newly discovered material facts exist if:

          (1) The newly discovered material facts were discovered after the trial.

          (2) The defendant exercised due diligence in securing the newly discovered material facts.

          (3) The newly discovered material facts are not merely cumulative or used solely for impeachment, unless the impeachment evidence substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence.

       f. The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part; or

       g. There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence; or

       h. The defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.

Ariz.R.Crim.P. 32.1.

Paragraph 32.1 (d) (expired sentence) generally has no application to an Arizona prisoner who is simply attacking the validity of his conviction or sentence. Where a claim is based on "newly discovered evidence" that has previously been presented to the state courts, the evidence is no longer "newly discovered" and paragraph (e) has no application. Here, Petitioner has long ago asserted the facts underlying his claims. Paragraph (f) has no application where the petitioner filed a timely notice of post-conviction relief. Paragraph (g) has no application because Petitioner has not asserted a change in the law since his last PCR proceeding. Finally, paragraph (h), concerning claims of actual innocence, has no application to the procedural claims Petitioner asserts in this proceeding.

Therefore, none of the exceptions apply, and Arizona's time and waiver bars would prevent Petitioner from returning to state court. Thus, Petitioner's claims that were not fairly presented are all now procedurally defaulted.

//

//

3.    **Application to Petitioner's Claims**

    a)  **Ground Two**

In Ground Two of his Petition, Petitioner argues a violation of his Miranda rights in violation of the Fifth, Sixth, and Fourteenth Amendments.  (Petition, Doc. 1 at 7-7C.) Petitioner argues he raised this issue on direct appeal.  (*Id.* at 7.)

Petitioner attempted to raise this claim to the Arizona Court of Appeals in Ground 2 of his *Pro Se* Supplemental Opening Brief on direct appeal.  (Exhibit P-C at 6.) However, this supplemental brief was stricken as an unauthorized *pro se* filing by a represented party.  (Exhibit P-D, Order 2/23/10.)  Accordingly, it was not fairly presented to the Arizona Court of Appeals in that proceeding.

He raised related claims of ineffective assistance of appellate counsel in Claim 3 of his *pro per* Petition for Post-Conviction Relief (Exhibit J, Appendix (Doc. 11-1 at 154, *et seq.*)).  However, he failed to fairly present any claims to the Arizona Court of Appeals in his PCR proceeding, because he failed to comply with the requirements for including his facts and arguments within his petition for review.  (Exhibit I, Mem. Dec. 2/10/14 at 1-2.)

To the extent that Petitioner may have included this claim in his petitions for review to the Arizona Supreme Court (either on direct appeal or in his PCR proceeding), such presentation would not have resulted in exhaustion. The Arizona Supreme Court does not grant review of claims not properly raised below, absent special considerations. *See State v. Logan*, 200 Ariz. 564, 565, 20 P.3d 631, 632, n.2 (2001).  "Submitting a new claim to the state's highest court in a procedural context in which its merits will not be considered absent special circumstances does not constitute fair presentation."  *Roettgen v. Copeland*,  33 F.3d 36, 38 (9th Cir. 1994) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).  In *Casey v. Moore*, 386 F.3d 896 (9th Cir. 2004), the court reiterated that to properly exhaust a claim, "a petitioner must properly raise it on every level of direct review."

Academic treatment accords: The leading treatise on federal habeas

> corpus states, "Generally, a petitioner satisfies the exhaustion requirement if he properly pursues a claim (1) throughout the entire direct appellate process of the state, or (2) throughout one entire judicial postconviction process available in the state."

*Casey*, 386 F.3d at 916 (quoting Liebman & Hertz, *Federal Habeas Corpus Practice and Procedure*, § 23.3b (4th ed. 1998). Thus, fair presentation to the Arizona Supreme Court for the first time is not sufficient to exhaust an Arizona state prisoner's remedies.

Accordingly, Petitioner has failed to fairly present his claim in Ground Two to the Arizona Court of Appeals, and for the reasons discussed hereinabove in Section III(A)(2), this claim is now procedurally defaulted.

### b) **Ground Three**

In Ground Three, Petitioner alleges that his Fifth Amendment due process rights were violated by an improper line-up and admission of identification testimony. Petitioner argues he raised this issue on direct appeal. (Petition, Doc. 1 at 8.)

As with Ground Two, Petitioner attempted to raise this claim to the Arizona Court of Appeals in Ground 2 of his *Pro Se* Supplemental Opening Brief on direct appeal. (Exhibit P-C at 6.) However, this supplemental brief was stricken as an unauthorized *pro se* filing, and thus was not fair presentation.

Petitioner asserted various challenges to the line-up and identification testimony to the PCR court, but as discussed with Ground Two he failed to fairly present any claims to the Arizona Court of Appeals in his Petition for Review, and similarly failed to fairly present any claims to the Arizona Supreme Court in that proceeding.

Accordingly, Petitioner has failed to fairly present his claim in Ground Three to the Arizona Court of Appeals, and for the reasons discussed hereinabove in Section III(A)(2), this claim is now procedurally defaulted.

### c) **Ground Six**

In Ground Six, Petitioner alleges that his Fifth and Fourteenth Amendment due process rights and his Sixth Amendment right to a jury trial were violated by the

imposition of consecutive sentences for a single act.  Petitioner argues he raised this issue on direct appeal.  (Petition, Doc. 1 at 11.)

As with Grounds Two and Three, Petitioner attempted to raise this claim to the Arizona Court of Appeals in Ground 5 of his *Pro Se* Supplemental Opening Brief on direct appeal.  (Exhibit P-C at 16, *et seq.*.)  However, this supplemental brief was stricken as an unauthorized *pro se* filing, and thus was not fair presentation.

Accordingly, Petitioner has failed to fairly present his claim in Ground Six to the Arizona Court of Appeals, and for the reasons discussed hereinabove in Section III(A)(2), this claim is now procedurally defaulted.

### a)      Summary Re Exhaustion

Based upon the foregoing, the undersigned concludes that Petitioner has procedurally defaulted on his claims in Grounds Two, Three, and Six.

### 2.    Cause and Prejudice

If the habeas petitioner has procedurally defaulted on a claim, or it has been procedurally barred on independent and adequate state grounds, he may not obtain federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

"Cause" is the legitimate excuse for the default.  *Thomas v. Lewis*, 945 F.2d 1119, 1123 (1991). "Because of the wide variety of contexts in which a procedural default can occur, the Supreme Court 'has not given the term "cause" precise content.'" *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990) (quoting Reed, 468 U.S. at 13), *cert. denied*, 498 U.S. 832 (1990).  The Supreme Court has suggested, however, that cause should ordinarily turn on some objective factor external to petitioner, for instance:

> ... a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that "some interference by officials", made compliance impracticable, would constitute cause under this standard.

1   *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citations omitted).

2           Petitioner makes no explicit argument of cause and prejudice.

3           In his Reply, Petitioner does assert arguments of ineffective assistance of trial,

4   and appellate counsel, although devoid of any factual support.  Ineffective assistance of

5   counsel may constitute cause for failing to properly exhaust claims in state courts and

6   excuse procedural default.  *Ortiz v. Stewart*, 149 F.3d 923, 932, (9th Cir. 1998).

7   However, "[t]o constitute cause for procedural default of a federal habeas claim, the

8   constitutional claim of ineffective assistance of counsel must first have been presented to

9   the state courts as an independent claim." *Cockett v. Ray*, 333 F.3d 938, 943 (9th Cir.

10  2003).   Here, Petitioner did not fairly present any claims of ineffective assistance to the

11  Arizona Court of Appeals in either his direct appeal (where the only fairly presented

12  claims was the misconduct claim raised by appellate counsel) or in his PCR proceeding

13  (where he failed to fairly present any claims).  Accordingly, Petitioner may not now rely

14  upon such ineffectiveness to avoid his procedural defaults.

15          Petitioner has also asserted to the state courts (Exhibit P-E, Pet. Rev. (Doc. 1-2 at

16  38, *et seq.*) that PCR counsel was ineffective.   Ordinarily, to meet the "cause"

17  requirement, the ineffective assistance of counsel must amount to an independent

18  constitutional violation.   *Ortiz v. Stewart*, 149 F.3d 923, 932, (9th Cir. 1998).

19  Accordingly, where no constitutional right to an attorney exists, ineffective assistance

20  will not amount to cause excusing the state procedural default.  *Id*.   "Ineffective

21  assistance of counsel can constitute cause to excuse a procedural default only if the

22  petitioner had a constitutional right to counsel in the proceeding in which the default

23  occurred. . . . The fact that counsel is appointed by the state court does not change the

24  result, because counsel is not constitutionally required." *Smith v. State of Idaho*, 392

25  F.3d 350, 357 (9th Cir. 2004) (emphasis in original, citations omitted).  If there is no

26  federal constitutional right to counsel, a petitioner "cannot establish cause because of the

27  state trial court's failure to appoint him counsel, even if such failure was erroneous as a

28  matter of state law." *Smith*, 392 F.3d at 357 .  In *Patrick Poland v. Stewart*, 169 F. 3d

16

573 (9th Cir. 1999), the Ninth Circuit held that "[b]ecause there is no right to an attorney in state post-conviction proceedings, there cannot be constitutionally ineffective assistance of counsel in such proceedings." *Id.* at 588 (quoting *Coleman v. Thompson*, 501 U.S. 722, 752 (1991)).

The Supreme Court has recognized two exceptions to the general rule that ineffectiveness of PCR counsel is not cause. The first exception was recognized in *Maples v. Thomas*, 132 S.Ct. 912 (2012), where the Supreme Court held that cause could be shown when PCR counsel was not merely negligent (and under the law of agency that negligence being chargeable to the petitioner) but had abandoned the representation without notice to the petitioner, resulting in the loss of his state remedies.

Here, however, Petitioner does not suggest that counsel abandoned the representation without notice, merely that counsel was deficient in not bringing claims Petitioner asserts are meritorious.  Indeed, counsel filed the appropriate notice to the Court when he was unable to find an issue of review. Thus, any such deficiency was not external to the defense, and is chargeable to Petitioner.

The second exception to the general rule that ineffectiveness of PCR counsel does not establish cause concerns the failure of PCR counsel to bring claims of ineffective assistance of trial counsel.[1]  In *Martinez v. Ryan,* 132 S.Ct. 1309 (2012), the Court recognized that because courts increasingly reserve review of claims of ineffective assistance of trial counsel to post-conviction relief proceedings, the ineffectiveness of counsel in such PCR proceedings could effectively defeat any review of trial counsel's ineffectiveness.  Accordingly, the Court recognized a narrow exception to the Court's ruling in *Coleman, supra,* that the ineffectiveness of PCR counsel cannot provide cause. Arizona, the state at issue in *Martinez*, is just such a state, and accordingly ineffective

---

[1]  The Ninth Circuit has concluded that an ineffective assistance of PCR counsel claim used to establish cause for a procedural default of a claim for ineffective assistance of trial counsel need not be exhausted itself.  *Dickens v. Ryan, Dickens v. Ryan*, 740 F.3d 1302, 1322 n. 17 (9th Cir. 2014) ("where *Martinez* applies, there seems to be no requirement that the claim of ineffective assistance of PCR counsel as cause for an ineffective-assistance-of-sentencing-counsel claim be presented to the state courts").

assistance of PCR counsel can establish cause to excuse a procedural default of a claim of ineffective assistance of trial counsel. In *Ha Van Nguyen*, 736 F.3d 1287 (9th Cir. 2013), the Ninth Circuit extended *Martinez* to PCR counsel's ineffectiveness in failing to bring claims of ineffective assistance of appellate counsel.

However, the *Martinez* court made clear that the limited exception it was creating only applies to the important "right to the effective assistance of trial counsel." 132 S.Ct. at 1320. Accordingly, Petitioner's complaint that PCR counsel was ineffective could not establish cause to excuse his procedural default of his claims in Grounds Two, Three, and Six, which are not based on ineffective assistance of trial (or appellate) counsel.

**Summary re Cause and Prejudice** – Based upon the foregoing, the undersigned concludes that Petitioner had failed to establish cause to excuse his procedural defaults.

Both "cause" and "prejudice" must be shown to excuse a procedural default, although a court need not examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n. 10 (9th Cir.1991). Petitioner has filed to establish cause for his procedural default. Accordingly, this Court need not examine the merits of Petitioner's claims or the purported "prejudice" to find an absence of cause and prejudice.

### 3.   **Actual Innocence**

The standard for "cause and prejudice" is one of discretion intended to be flexible and yielding to exceptional circumstances, to avoid a "miscarriage of justice." *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986). Accordingly, failure to establish cause may be excused "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (emphasis added). Although not explicitly limited to actual innocence claims, the Supreme Court has not yet recognized a "miscarriage of justice" exception to exhaustion outside of actual innocence. *See* Hertz & Lieberman, *Federal Habeas Corpus Pract. & Proc.* §26.4 at

1229, n. 6 (4th ed. 2002 Cumm. Supp.).  The Ninth Circuit has expressly limited it to claims of actual innocence.  *Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008).

A petitioner asserting his actual innocence of the underlying crime must show "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence" presented in his habeas petition.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  A showing that a reasonable doubt exists in the light of the new evidence is not sufficient.  Rather, the petitioner must show that no reasonable juror would have found the defendant guilty.  *Id*. at 329.  This standard is referred to as the "*Schlup* gateway." *Gandarela v. Johnson*, 286 F.3d 1080, 1086 (9th Cir. 2002).

Here, Petitioner makes no assertions of actual innocence, and proffers no new evidence to show that no reasonable juror would have found him guilty.  Accordingly his procedurally defaulted claims must be dismissed with prejudice.

**B.     GROUND ONE: INVASION OF ATTORNEY-CLIENT PRIVILEGE**

In Ground One, Petitioner alleges that the trial court violated his Sixth Amendment right to counsel by denying Petitioner's motion for a mistrial, by failing to instruct the jury to disregard improper questioning, and that prosecutor engaged in misconduct by conducting the questioning and then commenting on the issue.  (Petition, Doc. 1 at 6, *et seq.*)

Respondents argue that this claims was disposed of on the merits in Petitioner's direct appeal, and that Petitioner fails to show that the decision of the Arizona Court of Appeals was contrary to or an unreasonable application of Supreme Court law, and indeed fails to show that the Supreme Court has established any relevant law.  (Answer, Doc. 11 at 19-21.)

Petitioner replies, citing *U.S. v. Morrison*, 449 U.S. 361, 365 (1992), *U.S. v. Walker*, 839 F.2d 1483, 1487 (11th Cir. 1988), and *Schillinger v. Haworth*, 70 F.3d 1132, 1143 (10th Cir. 1995).

**Standard Applicable on Habeas** - While the purpose of a federal habeas

19

proceeding is to search for violations of federal law, in the context of a prisoner "in custody pursuant to the judgment a State court," 28 U.S.C. § 2254(d) and (e), not every error justifies relief.

**Errors of Law** - "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly." *Woodford v. Visciotti*, 537 U. S. 19, 24– 25 (2002) (per curiam).  To justify habeas relief, a state court's decision must be "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" before relief may be granted.  28 U.S.C. §2254(d)(1).

**Errors of Fact** -  Federal courts are further authorized to grant habeas relief in cases where the state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  "Or, to put it conversely, a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable."  *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004).

Moreover, a state prisoner is not free to attempt to retry his case in the federal courts by presenting new evidence.   There is a well-established presumption of correctness of state court findings of fact.  This presumption has been codified at 28 U.S.C. § 2254(e)(1), which states that "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner has the burden of proof to rebut the presumption by "clear and convincing evidence."

**Applicable Decisions** – In evaluating state court decisions, the federal habeas court looks through summary opinions to the last reasoned decision.  *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).  Here, the last reasoned decision on Petitioner's claim was that of the Arizona Court of Appeals on Petitioner's direct appeal.

**<u>Invasion of Right to Counsel</u>** –  "When the government deliberately interferes with the confidential relationship between a criminal defendant and defense counsel, that

interference violates the Sixth Amendment right to counsel if it substantially prejudices the criminal defendant." *Williams v. Woodford*, 384 F.3d 567, 584–85 (9th Cir.2004). In *U. S. v. Morrison*, 449 U.S. 361 (1981), the Supreme Court elucidated its holdings that invasion of the right to counsel does not automatically require a mistrial.

> Cases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests. . . In addition, certain violations of the right to counsel may be disregarded as harmless error.
> Our approach has thus been to identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial. The premise of our prior cases is that the constitutional infringement identified has had or threatens some adverse effect upon the effectiveness of counsel's representation or has produced some other prejudice to the defense. Absent such impact on the criminal proceeding, however, there is no basis for imposing a remedy in that proceeding, which can go forward with full recognition of the defendant's right to counsel and to a fair trial.
> More particularly, absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate.

*Id.* at 364-65 (citations omitted).

**Factual Determinations** – In disposing of this claim, the Arizona Court of Appeals summarized the facts as follows:

> The prosecutor sought to impeach Defendant's story by demonstrating that Defendant had not told his story to the police. During cross-examination, Defendant testified that he had not read the police report, and the following exchange occurred:
> Prosecutor: You have had somebody read [the police report] to you; haven't you?
> Defendant: No.
> Prosecutor: So no one told you what the police report says?
> Defendant: No.
> Prosecutor: In a year and a half no one discussed with you what's in the police report?
> Before Defendant answered the question, defense counsel requested a sidebar, and after the jury was excused, moved for mistrial. Counsel argued that the prosecutor had implicitly "comment[ed] on defendant's and defense counsel's communication and conversation." The prosecutor disagreed and argued that he was only trying to determine whether Defendant had general knowledge of what the police report stated.

(Exhibit A, Mem. Dec. 1/22/10 at 2-3.) The Arizona Court of Appeals found: "The court

denied the request for a mistrial, but instructed the prosecutor not to question Defendant further about the subject."  (Exhibit A, Mem. Dec. 1/22/10 at 3.)

Petitioner offers no argument that the court was unreasonable or even wrong about the facts. (Petition, Doc. 1 at 6, *et seq.*)  The undersigned finds the state court's determination of these facts to be correct. (*See* R.T. 11/24/08 at 105-111.)

Petitioner does further argue that the prosecutor violated the court's orders when he proceeded to ask Petitioner whether had had used the courtroom for trial preparation, and argued in closing that Petitioner had testified to not preparing for trial and about his not providing investigators his side of the story.  (Petition, Doc. 1 at 6B.)   Petitioner asserted the same facts to the Arizona Court of Appeals.  (Exhibit P-A, Opening Brief at 34-35.)

Petitioner does not explain how the trial court's instruction precluded inquiry about the usage of the courtroom to rehearse his testimony.   The trial court simply instructed:

> I think your [sic] entitled to question about whether he's aware of certain things within the police department reports. But I'm not going to allow any further questions along this line…So I will deny the defendant's motion for mistrial, with instructions that no further into this area of inquiry.

(Exhibit E, R.T. 11/24/08 at 108.)

Moreover, earlier in the day, the trial court specifically authorized questions about the rehearsal.   Defense counsel had requested permission to ask Petitioner questions without an interpreter to demonstrate his diction when communicating in English (as he had done with investigators).  (*Id.* at 58-60.)  Over the prosecution's objection, the trial court agreed to permit the demonstration.   The prosecution then requested permission to cross-examine Petitioner about rehearsing his testimony in the courtroom the day before. (*Id.* at 60.)  The trial court ruled:

> THE COURT: I think the defense is certainly entitled to ask victims that question when they get on the stand, I really see no difference .
> MR. INSERRA: Of course they can't ask what was said and asked?

22

> THE COURT: Absolutely. Content is privileged because I understand counsel was present.

(*Id.* at 60-61.)

Later, during argument on the motion for mistrial, defense counsel complained that the line of questioning on the police report suggested to the jury that defense counsel had not properly handled the case. To demonstrate no intent to impugn defense counsel's professionalism, the prosecution pointed out the intent to instead show that defense counsel had rehearsed testimony with Petitioner:

> MR. CHURCH: This is impeachment, Your Honor. It's frankly exactly what it is.
> Per our conversation earlier in the afternoon, I asked the court if counsel is allowed to do some things, if I was able to go into the general topic of the defendant requesting to use the courtroom to prepare for trial, to prepare his testimony. The court indicated I had.
> He's now testifying he's never looked at the police report, never talked about it, yet, he prepared his testimony. I'm not claiming anything that Mr. Inserra said to his client or making any kind of assertion that Mr. Inserra didn't do his job. It's not on Mr. Inserra. It's on the defendant with his answers. If he doesn't want to -- if he wants to answer question that way, it's his prerogative.

(*Id.* at 109-110.)

After the discussions on the motion for mistrial regarding the police reports, the prosecution questioned:

> Q. BY MR. CHURCH: Sir, you used the courtroom to prepare your testimony on Thursday afternoon; isn't that correct?
> A. No.
> Q. You never you used the courtroom on Thursday afternoon?
> A. I just talked to my attorney for about five minutes.
> Q. And then you left?
> A. Yes.

(*Id.* at 111-112.)

In closing arguments, the prosecutor asserted:

> But did he act like a person who was being straightforward back when he spoke with the police? No, he didn't. He came forward with some things. He made a statement about throwing the weapon out the window. Then he completely changes what he says here. He has an explanation for everything. Every single point that's brought up he had an explanation for. But he's never prepared. He had no idea about preparation in this case. And he only recalled certain little bits when the police officers were talking throughout the duration of

23

trial.  Does that make a lick of sense?

(Exhibit RT 11/25/08 at 46.)

The Arizona Court of Appeals summarized these facts as follows:

> During closing argument, the prosecutor argued that Defendant had changed his story for trial. He stated, "Then [Defendant] completely changes what he says here. He has an explanation for everything. Every single point that's brought up he had an explanation for. But he's never prepared. He had no idea about preparation in this case." Defendant argues that the prosecutor's statements about trial preparation were in reference to the improper questions asked by the prosecutor, and served to increase the prejudice to him. We disagree. During cross-examination, Defendant also testified that he had not prepared for his testimony. Based on Defendant's testimony, the prosecutor's comments were not improper, nor do they amount to fundamental error.

(Exhibit A, Mem. Dec. 1/22/10 at 5, n. 4.)   Petitioner points to no portion of these findings which was unreasonable, or even wrong.

**Legal Determinations** – The Arizona Court of Appeals rejected the argument with regard to the police report questions.  The court agreed "with the trial court that the broad questioning employed by the prosecutor had the potential of infringing on Defendant's attorney-client privilege." (Exhibit A, Mem. Dec. 1/22/10 at 4, ¶ 17.)  But the court agreed with the trial court that there was insufficient prejudice to merit a mistrial.

> Here…the trial court weighed the effect of the prosecutor's questions on the entire proceedings and could very well have felt, as we do, that there was little, if any, prejudicial effect. Defense counsel timely intervened and the court prudently addressed the situation outside of the presence of the jury. The jury, as a result, was never alerted to the nature of the objection or the ramifications of the question. The trial court was in the best position to assess the impact of the questions and it was not error to find that their influence was minimal.

(*Id.* at 5, ¶ 21.)

Petitioner proffers no explanation how this determination was contrary to, or an unreasonable application of federal law.   As discussed hereinabove, remedies for incursions into the attorney-client privilege are tailored to fit the perceived harm, and when there is no prejudice, no mistrial is required. *U. S. v. Morrison*, 449 U.S. 361 (1981).   Certainly there may have been the potential for harm from expanding the

questioning on the review of the police reports, but that harm was unrealized because the trial court terminated the line of questioning.

Similarly, with regard to the rehearsal, Petitioner has failed to show prejudice. The prosecution complied with the trial court's instruction and did not inquire about the content of rehearsal. Even the reference to the participation of counsel was volunteered by Petitioner. And no inquiry was made into the contents of their communications.

With regard to the closing arguments, the prosecutions' comments were limited to observing Petitioner's denial of having prepared his testimony. Again, there was no assertion of the contents of any communication between Petitioner and counsel. And, Petitioner fails to suggest any prejudice from this limited argument.

In sum, Petitioner has failed to show any significant incursion into the attorney client privilege, and had failed to show any prejudice.

Accordingly, Petitioner's Ground One is without merit and must be denied.

## C.   GROUND FOUR: INEFFECTIVENESS OF TRIAL COUNSEL

### 1.   Background

#### a.   Parties' Arguments

In his Ground Four, Petitioner argues that trial counsel was ineffective because: (1) he was disciplined and later disbarred; (2) he failed to investigate, interview, subpoena, and prepare witnesses; (3) failed to cross-examine a victim with his criminal record; and (4) failed to impeach witnesses' in-court identifications with their responses to photographic lineups. (Petition, Doc. 1 at 9, physical page 15, *et seq.*)

Respondents argue these claims are without merit. (Answer, Doc. 11 at 24, *et seq.*)

Petitioner replies only with general arguments regarding legal standards for ineffective assistance of counsel. (Reply, Doc. 22.)

//

//

### b.   State Court Rulings

Petitioner raised a variety of claims of ineffective assistance in his PCR proceeding.  However, none of his claims were addressed on the merits by the Arizona Court of Appeals, which disposed of them as unargued.[2]  Thus, the only merits rulings are those by the PCR court.  That court, however, addressed a limited set of claims of ineffective assistance, which did not include many of the claims raised now by Petitioner.

Accordingly, any merits ruling by the PCR court will be addressed hereinafter with regard to each subclaim.

### 2.   Applicable Standard on Ineffective Assistance Claims

Generally, claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984).  In order to prevail on such a claim, Petitioner must show:  (1) deficient performance - counsel's representation fell below the objective standard for reasonableness; and (2) prejudice - there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at  687-88.  Although the petitioner must prove both elements, a court may reject his claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial.  *Id.* at 697.

There is a strong presumption counsel's conduct falls within the wide range of reasonable professional assistance and that, under the circumstances, the challenged action might be considered sound trial strategy.   *U.S. v. Quinterro-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995), *cert. denied*, 519 U.S. 848 (1996); *U.S. v. Molina*, 934 F.2d 1440, 1447 (9th Cir. 1991).   The court should "presume that the attorneys made

---

[2] Respondents neither argue the procedural default of this claim, nor concede exhaustion. Perhaps Respondents do so in anticipation of Petitioner's reliance upon *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), to excuse a default, which in turn would mandate consideration (at least preliminarily) of the merits of Petitioner's claims of ineffectiveness of trial counsel.

reasonable judgments and decline to second guess strategic choices." *U.S. v. Pregler*, 233 F.3d 1005, 1009 (7th Cir. 2000).

An objective standard applies to proving such deficient performance, and requires a petitioner to demonstrate that counsel's actions were "outside the wide range of professionally competent assistance, and that the deficient performance prejudiced the defense." *United States v. Houtcens*, 926 F.2d 824, 828 (9th Cir. 1991) (quoting *Strickland*, 466 U.S. at 687-90). The reasonableness of counsel's actions is judged from counsel's perspective at the time of the alleged error in light of all the circumstances. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *Strickland*, 466 U.S. at 689.

"The law does not require counsel to raise every available nonfrivolous defense. Counsel also is not required to have a tactical reason—above and beyond a reasonable appraisal of a claim's dismal prospects for success—for recommending that a weak claim be dropped altogether." *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009) (citations omitted).

Moreover, it is clear that the failure to take futile action can never be deficient performance. *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir.1996); *Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012). "The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel." *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982).

**3.**     **Application to Claims**

    **a)**   **Professional Discipline**

Petitioner complains that his attorney, Mr. Inserra, was placed on professional disciplinary probation on March 19, 2007, and sometime after trial, was "disbarred."

Petitioner was represented by Mr. Inserra from March 6, 2008 (Exhibit C, M.E. 3/6/8) through the completion of trial on November 26, 2008 (Exhibit R.T. 11/26/08). However, at the hearing on aggravators on April 10, 2009, Petitioner was represented by

Mr. Tucker.   (Exhibit R.T. 4/10/09.)   Apparently Mr. Inserra terminated his representation between November 26, 2008 and April 10, 2009, and presumably upon being suspended on or about January 7, 2009.

The records provided by Petitioner reflect that trial counsel was placed on disciplinary probation on March 19, 2007, was suspended from practice for one year in an order dated January 7, 2009, and on June 16, 2010 the Arizona Supreme Court suspended him from practice of law, retroactive to February 7, 2009.  Petitioner presents no evidence that Mr. Inserra was ever disbarred, rather than merely suspended.

Thus, during the bulk of his representation of Petitioner, Mr. Inserra was on disciplinary probation.  Assuming his representation of Petitioner terminated upon his suspension, which was between trial and sentencing, Mr. Inserra did not represent Petitioner while suspended.

Nonetheless, as pointed out by Respondents, the Sixth Amendment does not guarantee counsel free of professional discipline.   The Ninth Circuit has stated it succinctly in similar circumstances:

> The Sixth Amendment right to counsel exists "not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." It follows that "defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation."  If counsel, who once passed the bar but was suspended before trial, still performed adequately, the process is not made fairer by awarding defendant a windfall even if he can't identify a single thing a licensed attorney would have done differently.

*United States v. Ross*, 338 F.3d 1054, 1056-57 (9th Cir. 2003) (citations omitted).  Accordingly, complaints that counsel has undergone professional discipline "are appropriately addressed under the same rubric generally applicable to claims of ineffective assistance of counsel: the test set forth in [*Strickland*], actual deficient performance plus prejudice."  *Id.* at 1056.

In *United States v. Mouzin*, 785 F.2d 682 (9th Cir. 1986), the court distinguished between "a person posing as a lawyer who had not been admitted to any bar" and an admitted lawyer subjected to discipline. *Id.* at 697.  In the former situation,  "one never

admitted to practice law and therefore who never acquired the threshold qualification to represent a client in court cannot be allowed to do so, and no matter how spectacular a performance may ensue, it will not constitute 'effective representation of counsel' for purposes of the Sixth Amendment." *Id.* "Conversely, the infliction of discipline upon an attorney previously qualified and in good standing will not and should not transform his services into ineffective assistance." *Id.*

Accordingly, trial counsel's being on probation or suspended, or even disbarred, while representing Petitioner does not satisfy *Strickland*'s requirement for a showing of deficient performance and prejudice.

Petitioner fails to show deficient performance or prejudice in this portion of Ground 4.

### b)  Witnesses

Petitioner argues that trial counsel performed deficiently by failing to investigate the existence of, to interview, to prepare for trial, and to subpoena witnesses.

A habeas petitioner may not leave a court to speculate what evidence the deficient investigation would have discovered.  In order to prevail on an allegation that defense counsel conducted an insufficient investigation resulting in ineffective assistance, the petitioner must show specifically what that investigation would have produced.  A petitioner may not simply speculate about what a witness' testimony might be, but must adduce evidence to show what it would have been.  *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997).  "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."  *U.S. v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991).

Petitioner argues that counsel should have issued a subpoena for the **witness D.P.**

1    who had asserted that the photo in the photo lineup did not appear familiar.[3]   However,

2    Petitioner points to no evidence of such identification.   Moreover, even accepting

3    Petitioner's assertions, D.P. could have proffered nothing more than a failed

4    identification. Without evidence that the witness the had the ability to perceive the

5    culprit, and opportunity and reason to observe, a failed identification is irrelevant.

6    Petitioner proffers nothing to suggest evidence was available to support those facts.

7        Petitioner also argues that when shown a photo lineup during the investigation,

8    the **witness M.W.** identified a subject and stated she was 85% sure it was the perpetrator.

9    This witness did not testify at trial, but did testify at the voluntariness hearing. (Exhibit J,

10   Appendix C, PCR Response at 7.)   Petitioner fails to explain what beneficial testimony

11   counsel could have elicited from this witness.  In its PCR Response, the state seemed to

12   concede that M.W. had been unable to identify Petitioner from a photo lineup during the

13   investigation, but did identify Petitioner at the voluntariness hearing.  (*Id.*)   At best,

14   therefore, it appears that counsel was faced with a witness who would identify Petitioner

15   at trial, but could be impeached on the basis that she was not certain in the identification.

16   Counsel could have made a reasonable strategic determination that defendant was better

17   off with no testimony from M.W., and thus no identification, rather than trying to

18   persuade a jury that her identification should be rejected because of a prior inconsistent

19   identification.   Even then, the best that would have resulted was the jury faced with a

20   different failed identification.  Moreover, even if it is assumed that M.W. had identified

21   someone other than Petitioner, Petitioner fails to present any evidence to show that M.W.

22   would have testified the same way at trial.

23       Petitioner next seems to argue that counsel should have prepared the **victim J.S.**

24   whose testimony at trial described the perpetrator as Hispanic, while J.S. had described

25   the perpetrator to police officers as a black man.  Petitioner proffers anything to suggest

26

27   [3] Petitioner's PCR Petition complained only about the failure to attack the identifications
     of M.W. and J.S., and did not assert a claim with respect to D.P.  (*See* Exhoibit P-E, PCR
28   Pet. at A-1 to A-2.)

that "preparation" of J.S. would have been possible or productive.  As pointed out by Respondents (Answer, Doc. 11 at 28), trial counsel had no right, under Arizona law, to interview a victim, let alone "prepare" them.   *See* Ariz. Const. Art. 2, § 2.1(A)(5) (giving a victim the right "to refuse an interview, deposition, or other discovery request by the defendant").   Moreover, on cross examination, J.S. denied having earlier described the perpetrator as black.  (Exhibit R.T. 11/19/08 at 79-80.) Petitioner does not explain why an interview or attempted preparation by trial counsel could have resulted in different testimony by J.S.

Apart from these three witnesses (K.P., M.W., and J.S.), Petitioner does not proffer the identity of any overlooked or unprepared witnesses, let alone what beneficial testimony they might have provided, even if properly prepared.  Nor does he proffer anything to suggest that the outcome of the proceeding would have been different had such persons testified.

Petitioner fails to show deficient performance in this portion of Ground 4.

### c)  Impeachment re Criminal Record

Petitioner next argues that trial counsel was deficient for failing to impeach the victim, K.P., with a purportedly extensive criminal record.

As argued by Respondents, the only evidence of such a criminal record provided by Petitioner is a police report in his Exhibit P-G.  That reports list K.P. as a victim, not a suspect, and appears to relate to his status as victim in the instant crime.

Petitioner fails to show deficient performance or prejudice in this portion of Ground 4.

### d)  Impeachment re Identifications

Finally, Petitioner argues that counsel failed to impeach witnesses' in-court identifications with their responses to photographic lineups.  (Petition, Doc. 1 at 9, physical page 15, *et seq.*)  In particular, he argues that when shown a photo lineup during

the investigation, the witness M.W. identified a subject (apparently not Petitioner) and stated she was 85% sure it was the perpetrator.  And, he argues that the evidence showed the victim J.S. described the perpetrator to the police as "a light complexioned black male," and then testified at trial that the perpetrator was Hispanic.

Respondents argue that Petitioner incorrectly concludes that these discrepancies were the purpose for his original counsel, Mr. Trucker, requesting a pre-trial identification hearing.  Respondents contend that the hearing was requested to argue issues related to the identification by the victim K.P., not the identifications by M.W. or J.S.  (Answer, Doc. 11 at 26-27.)

Regardless, M.W. did not testify at trial, and thus counsel had no cause or opportunity to try to impeach M.W..  Assuming Petitioner contends counsel was deficient in cross examining M.W. at the voluntariness hearing where she did testify, Petitioner fails to show how more effective impeachment there would have resulted in a different outcome at trial.

With regard to J.S., Respondents argue that trial counsel did cross examine him about the discrepancy in the earlier identification, and was limited by Arizona law from interviewing the victim.  (*Id.* at 27-28.)

> BY MR. INSERRA:
> Q. Hello, Mr. Santos. When you described the person who took your car to the police back in May of 2007, did you describe him as a black male?
> A. No.
> Q. So if an officer testifies that you described as a him a black male, that officer would be mistaken?
> A. No. I didn't say that.
> Q. Did you describe the person who took your car to the officers?
> A. I don't recall. But I told the officer when they show me the photo, I say it's difficult. Because all these photos, and the guy took my car, they look exactly the same, which is Mexicans. They're all alike, that's what I said.

(Exhibit R.T. 11/19/08 at 79-80.)   Petitioner fails to suggest what additional cross-examination should have been conducted.

Petitioner fails to show deficient performance in this portion of Ground 4.

### e)  <u>Prejudice</u>

In light of the other substantial evidence against Petitioner (including the other identifications, his connections to the abandoned vehicle by the articles left inside, the connection in vehicle descriptions between the first stolen vehicle and the vehicle used in the second theft, and his arrest in the second stolen vehicle, etc.) the undersigned cannot find a reasonable probability that, but for counsel's purported failures, the outcome would have been different.

Accordingly, Ground Four is without merit and must be denied.

## D.   <u>GROUND FIVE: INEFFECTIVENESS OF APPELLATE COUNSEL</u>

In his Ground 5, Petitioner argues that he received the ineffective assistance of appellate counsel in violation of his Sixth Amendment rights, based on counsel's failure to raise claims based on *Miranda*, a tainted photo lineup, insufficient evidence, and an illegal sentence.  (Petition, Doc. 1 at 10.)

Respondents argue that mere failure to raise claims proffered by a defendant does not amount to ineffective assistance.  (Answer, Doc. 11 at 29.)  Respondents further argue that any *Miranda* claim would have been without merit (*id.* at 30-31), as would the tainted lineup claim (*id.* at 31), insufficient evidence claim (*id.* at 31-32), and the illegal sentence claims (*id.* at 32-33).

Although in his Reply Petitioner makes various general legal arguments about the ineffective assistance of appellate counsel, he again fails to address the specifics of his claims.  (Reply, Doc. 22 at 13-14.)

The general rule is that tactical decisions with which a defendant disagrees cannot form the basis for a claim of ineffective assistance of counsel.  *Morris v. California*, 966 F.2d 448, 456 (9th Cir. 1991), *cert. denied*, 113 S. Ct. 96 (1992).  "Mere criticism of a tactic or strategy is not in itself sufficient to support a charge of inadequate representation." *Gustave v. United States*, 627 F.2d 901, 904 (9th Cir. 1980).    Further,

the reviewing court need not determine the actual reason for an attorney's actions, as long as the act falls within the range of reasonable representation.   *Morris*, 966 F.2d at 456-457.

One flavor of tactical decision required of counsel is selection of which issues to pursue. "In many instances, appellate counsel will fail to raise an issue because she foresees little or no likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy." *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989).  "The law does not require counsel to raise every available nonfrivolous defense. Counsel also is not required to have a tactical reason—above and beyond a reasonable appraisal of a claim's dismal prospects for success—for recommending that a weak claim be dropped altogether." *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009) (citations omitted).

In *Jones v. Barnes*, 463 U.S. 745 (1983), the Supreme Court rejected the ruling of the Second Circuit that a defendant had a "constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points."  *Id.* at 751.  The Court reasoned that the right to counsel on appeal was a right to an advocate who would apply his professional judgment as an advocate, including winnowing out arguments counsel believes to be lesser. *Id.* at 752-753.

Here, Petitioner offers a litany of claims he demanded appellate counsel raise. Appellate counsel was not deficient simply by refusing to concede.

Moreover, Petitioner fails to support any of his claims with facts or arguments to show that the claims he asserts should have been raised were even viable.  Accordingly, there is no basis for this Court to find either deficient performance or prejudice.

This Court need not shadow box with Petitioner's conclusory claims to determine that Petitioner fails to support his claim of ineffective assistance of appellate counsel. Indeed, conclusory allegations that are not supported by specific facts do not merit habeas relief. *James v. Borg*, 24 F.3d 20, 26 (9th Cir.), *cert. denied, sub nom James v.*

*White*, 513 U.S.935 (1994).

With regard to the *Miranda* issue, appellate counsel advised Petitioner:

> First, there was the interview. I went to the court and watched the interview CD. I then thoroughly researched this issue, but at every turn I came up short. The case law says that the judge's decision on the facts will be given great deference. The cases say that being on drugs does not affect the voluntariness of an interview, as long as the other tests for voluntariness are met. The case law says that *Miranda* warnings, once given, carry over to subsequent interview that are fairly close in time. Nothing I found would support an argument that Miranda was violated, or that your interview was involuntary. So, I did not raise the issue. Believe me, I wanted to - I did all that I needed to raise it. But if there is no law to support an issue, it cannot be raised.

(Exhibit P-C, Supp. Brief, Emer. Mot, Attachment A, LF Peterson 1/26/10 at 1.) Petitioner fails to suggest any factual or legal error in this analysis, let alone showing that it was unreasonable.

With regard to the photo lineup, appellate counsel explained:

> Second, there is the identification, or *Dessureault* issue.  You will see from reading the brief that your trial attorney filed a motion for a hearing on this point, but that motion was later essentially "abandoned" when it was not pursued. That would mean the issue could only be raised as "fundamental error" on appeal - a very difficult standard to meet. I considered raising this issue, and have done so in other situations. However, I have never successfully raised a *Dessureault* issue as fundamental error. As a practical matter, it is I nearly impossible to do so when (as here) the trial attorney fails to follow through on the issue and as a result the trial court does not hold a hearing. And, in your case, the only witness the issue applied to was [K.P.]. I could not make a good faith argument that [K.P.] could only identify you because he saw your driver's license - that he did not have a good chance to see you at the time of the offense and that the driver's license  influenced him to such a degree that his later identification could not be valid. He testified at trial that he looked right at you for quite some time. This was not a questionable identification. In my opinion, it would be impossible to prove the prejudice necessary to succeed on this issue.

(*Id.* at 1-2.)  Again, Petitioner fails to suggest any factual or legal error in this analysis, let alone showing that it was unreasonable.

With regard to insufficient evidence, Petitioner simply proffers no element of the offense not supported by evidence.

With regard to an illegal sentence, appellate counsel explained:

35

> Third, you raise the sentencing "same set of events" issue. I will concede that this is an issue I did not consider raising or research before filing your brief. However, as you can see from the attached case, the test is not the same that you describe (from *Phillips*). The test is much narrower. Essentially, each offense must involve the same "act" before concurrent sentences are required. Obviously, what happened to [K.P.] and what happened to [J.S.] were completely different acts. It would not be possible to successfully argue that the law or constitution required concurrent sentences.

(*Id.* at 2.) Again, Petitioner fails to suggest any factual or legal error in this analysis, let alone showing that it was unreasonable.

Even if Petitioner could now produce some facts and arguments to suggest the issues were viable on appeal, Petitioner proffers nothing to suggest they were so much stronger than the issues raised on direct appeal that counsel was deficient in selecting the ones he proceeded on.   Rather, the record reflects that appellate counsel diligently evaluated the case, considered the claims with some apparent viability, and determined that the prosecutorial misconduct claim had the best chance of success.

> Fourth, you mention the prosecutorial misconduct issue, which I did raise. I am very hopeful that this will be successful. We should be getting the State's response soon and it will be interesting to see if they found something to counter our arguments.

(*Id.*)

Under these circumstances, the undersigned can find neither deficient performance nor prejudice in the actions of appellate counsel.   Accordingly, Ground 5 is without merit and must be denied.

## E.   SUMMARY

Petitioner has procedurally defaulted on his claims in Grounds Two, Three, and Six.   He has failed to show cause and prejudice or actual innocence to avoid the effect of that procedural default, and these claims must be dismissed with prejudice.

Petitioner's claims in Grounds One, Four, and Five are without merit, and must be denied.

//

//

36

### IV.   CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment.  The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner.  Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be in part on procedural grounds, and in part on the merits. Under the reasoning set forth herein, jurists of reason would not find it debatable whether the district court was correct in its procedural ruling, and jurists of reason would not find the district court's assessment of the constitutional claims

37

debatable or wrong.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.

## V.     RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Grounds Two, Three, and Six of the Petitioner's Petition for Writ of Habeas Corpus, filed June 30, 2015 (Doc. 1) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that the remainder of Petitioner's Petition for Writ of Habeas Corpus, filed June 30, 2015 (Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings and recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.

## VI.     EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section 2254 Proceedings.   Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-

47 (9th Cir. 2007).

Dated: April 21, 2016

James F. Metcalf
United States Magistrate Judge

15-1221r RR 16 01 28 on HC.docx